**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------  x
DENNIS WALKER and SALLY O'NEAL  :
WALKER,                         :
                                :
          Plaintiffs,           :
                                :
v.                              :     Civil No. 3:16-cv-697(AWT)
                                :
DEUTSCHE BANK NATIONAL TRUST    :
COMPANY, AS TRUSTEE FOR MORGAN  :
STANLEY LOAN TRUST 2005-11AR, and :
WELLS FARGO BANK, N.A. d/b/a    :
AMERICA'S SERVICING COMPANY,    :
                                :
          Defendants.           :
------------------------------  x
```

## ORDER RE PARTIAL MOTION TO DISMISS

For the reasons set forth below, Defendants' Partial Motion to Dismiss Plaintiffs' Complaint (Doc. No. 20) is hereby GRANTED in part and DENIED in part.  The motion is being granted with respect to Counts Five (but with leave to replead), Eight, Nine (but with leave to replead), Ten, Eleven (except with respect to any cause of action arising under 12 U.S.C. § 2605(b)), Twelve (but with leave to replead), Thirteen, and Fourteen.  The motion is being denied with respect to Counts Two, Four, Seven and any remaining cause of action arising under 12 U.S.C. § 2506(b).

## Counts Two and Four – Good Faith and Fair Dealing

"[E]very contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement."  Rafalko v. Univ. of New Haven, 129 Conn. App. 44, 51 (2011).  "[T]o constitute a

-1-

breach of the [implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." Caires v. JP Morgan Chase Bank, N.A., 880 F. Supp. 2d 288, 307-08 (D. Conn. 2012) (quotation marks omitted) (quoting Landry v. Spitz, 102 Conn. App. 34, 42 (2007)).  "Bad faith means more than mere negligence; it involves a dishonest purpose." De La Concha of Hartford, Inc. v. Aetna Life Ins. Co., 269 Conn. 424, 433 (2004).

> Bad faith in general implies [either] actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.

Habetz v. Condon, 224 Conn. 231, 237 (1992) (emphasis added) (quoting Funding Consultants, Inc. v. Aetna Casualty & Surety Co., 187 Conn. 637, 644 (1982)).  "A plaintiff cannot state a claim for breach of the implied covenant simply by alleging a breach of the contract, in and of itself."  TD Bank, N.A. v. J & M Holdings, LLC, 143 Conn. App. 340, 349 (2013).

Here, the plaintiffs allege not only that the defendants "failed" to honor the first modification and second modification agreements, but also that the defendants "refused" to honor these agreements.  See Compl. Count Two ¶¶ 20(a), (b) and (c), 21, 24, and Count Four ¶¶ 18(a), and 21.  Also, the facts alleged with

respect to the fraudulent misrepresentation claim support an inference that the defendants' refusal to honor the modification agreements was designed to mislead or deceive, and that the defendants operated with an interested or sinister motive in their handling of the first modification and second modification agreements.  When these factual allegations are read together with those under Count Two and Count Four, the plaintiffs have adequately alleged bad faith.

Accordingly, the plaintiffs have sufficiently alleged a claim for breach of the implied covenant of good faith and fair dealing in both Count Two and Count Four, and the motion to dismiss is being denied as to these counts.

## Counts Five and Twelve – Fraudulent Misrepresentation and Fraud

"When a party pleads fraud, the alleged fraud must be pled with the particularity required by Rule 9(b)." Trefoil Park, LLC v. Key Holdings, LLC, No. 3:14-CV-364 (VLB), 2015 WL 1138542, at *5 (D. Conn. Mar. 13, 2015).  "Rule 9(b) provides that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'"  Id.  "In this Circuit, therefore, a complaint based on fraudulent acts must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  Id. (quoting Mills v. Polar Molecular Corp., 12

F.3d 1170, 1175 (2d Cir. 1993)).  While "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally," as a safeguard to a defendant's reputation, plaintiffs "must allege facts that give rise to a strong inference of fraudulent intent."  Id. (quoting Parola v. Citibank (South Dakota) N.A., 894 F. Supp. 2d 188, 200 (D. Conn. 2012)).  "The 'strong inference of fraud' may be established by either alleging facts to show that a defendant had both the motive and opportunity to commit fraud, or facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'"  Id. (quoting Parola, 894 F. Supp. 2d at 200)).

Here, the defendants argue that the complaint fails to satisfy requirements two, three and four of the heightened pleading standard as articulated in Mills.  The plaintiffs "have pled that 'authorized agents, representatives, and/or employees' of the Defendants made the representations," which they contend "states with enough particularity that an authorized individual(s)/representative(s) [sic] of the Defendants allegedly made the representations."  Pls.' Mem. (Doc. No. 26) 15.  While the plaintiffs correctly point out that courts have permitted reference to a company's agents to satisfy the requirement that the speaker be identified, see Reynolds v. Lifewatch, Inc., 136 F. Supp. 3d 503, 523-24 (S.D.N.Y. 2015), the court need not assess whether such a reference is sufficient with respect to the speaker

here, because the plaintiffs fail to plead the time and place with particularity.

The plaintiffs also argue the Complaint "allege[s] that the statements were made in writing or through the mediation program and the dates the agreements were offered and accepted."  Pls.' Mem. 14.  The court disagrees.  The Complaint does not specify that the statements were made in writing or through the mediation program, and even if it did, any such specification would not be sufficient to satisfy the requirement of particularity.  For example, with respect to Count Five ¶¶ 28-30 of the Complaint, the plaintiffs do not point to where such statements appear in the first modification agreement, and the court is unable to locate any.  See First Modification Agreement, Compl. Ex. 1 (Doc. No. 25).  Nor do the plaintiffs give any indication as to when during the mediation program the statement may have been made, whether in writing or orally, whether in person or by telephone.  The allegations in ¶¶ 31-33 are similarly insufficient, although the second modification agreement is not attached to the Complaint, and thus the court did not review it.

In addition, the alleged representations by the defendants to the plaintiffs "that the Plaintiffs had to be in default in order to modify their loan," Compl. Count Five ¶ 38(g), would have to have been made prior to the plaintiffs' default, so it is not apparent how they would have occurred "through the mediation

-5-

program," as the plaintiffs state.  For instance, the plaintiffs allege: "Prior to the Plaintiffs defaulting upon the Note, the Plaintiffs contacted the Defendant, Deutsche Bank[,] to request a modification and at that time the Defendant advised the Plaintiffs that it would not consider a request for modification unless the subject loan was in default."  Compl. Count Five ¶ 34.  Without more, even when viewed in the light most favorable to the plaintiffs and drawing all reasonable inferences in their favor, such a statement is insufficient to satisfy the third requirement as to particularity.

The defendants also argue that the plaintiffs fail to explain how the representations were fraudulent, and thus do not satisfy the fourth requirement as to particularity.  The court agrees with respect to any statements or allegations related to the "Defendants['] incorporation of erroneous figures in the First Modification [A]greement without the knowledge of the Plaintiffs." Compl. Count Five ¶ 39(c).  The plaintiffs fail to specify which figures were false and what made them false.  Accordingly, these statements are insufficient to satisfy the fourth requirement as to particularity.

Therefore, the motion is being granted with respect to Count Five, but with leave to replead.  Because the plaintiffs plead no additional facts in Count Twelve, but rather incorporate by reference the allegedly fraudulent statements from Count Five, the

motion also is being granted with respect to Count Twelve, but also with leave to replead.

**Count Seven – CUTPA**

"[T]o prevail on a CUTPA claim, the plaintiffs must prove that (1) the defendant[s] engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce . . . and [the plaintiffs suffered] ascertainable loss of money or property as a result of the defendant[s'] acts or practices." Caires v. JP Morgan Chase Bank, N.A., 880 F. Supp. 2d 288, 299 (D. Conn. 2012) (quoting Neighborhood Builders, Inc. v. Town of Madison, 294 Conn. 651, 657 (2010)).  In determining whether a practice violates CUTPA, Connecticut courts:

> have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise – in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons] . . . . All three criteria do not need to be satisfied to support a finding of unfairness.  A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy.

Harris v. Bradley Memorial Hosp. & Health Ctr, Inc., 296 Conn. 315, 350-51 (2010) (alterations in original) (quoting Ramirez v. Health Net of the Northeast, Inc., 285 Conn. 1, 18-19)).

Here, the defendants argue that the plaintiffs fail to state
a CUTPA claim because they "fail to articulate how any of [their]
allegations constitute unfair or deceptive trade practices."
Defs.' Mem. (Doc. No. 21) 13.  The court disagrees.  As the
plaintiffs point out, the Complaint alleges the defendants'
breaches of the first and second modification agreements; practice
of advising borrowers that default on their loan is necessary to
obtain a modification of the loan; renewal of the plaintiffs'
insurance policy without contractual authority or permission from
the plaintiffs; repeated asking for documents over a six-year
period, leading the plaintiffs to believe modification was on the
horizon; and bad faith use of the mediation program.  See Pls.'
Mem. 18.  While "[a] simple breach of contract, even if
intentional, does not amount to a violation of [CUPTA, and] a
[claimant] must show substantial aggravating circumstances
attending the breach to recover," Emlee Equip. Leasing Corp. v.
Waterbury Transmission, Inc., 41 Conn. Supp. 575, 580 (Conn.
Super. Ct. 1991) (third alteration in original), these allegations
are sufficient to plead substantial aggravating circumstances.

The defendants also argue that the plaintiffs "fail to show
how any of this alleged conduct causes 'substantial' injury to
consumers."  Defs.' Mem. 14.  However, substantial harm may be a
presumed result of a number of the acts alleged by the plaintiffs,
e.g., inducement of the plaintiffs to default on a loan as a

-8-

result of the defendants' misrepresentations, bad faith practices with regard to the loan modification agreements, inducement of the plaintiffs to withdraw their counterclaims in the foreclosure action, and wrongful renewal of the plaintiffs' insurance policy, which satisfies this requirement.

Therefore, the motion is being denied as to Count Seven.

**Count Eight – Breach of Fiduciary Duty**

With respect to the plaintiffs' claim that the defendants, as lenders, breached a fiduciary duty to the plaintiffs, as borrowers:

> It is axiomatic that a party cannot breach a fiduciary duty to another party unless a fiduciary relationship exists between them. [A] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other.

Sherwood v. Danbury Hosp., 278 Conn. 163, 195 (2006) (quoting Biller Assocs. V. Peterken, 269 Conn. 716, 723 (2004)).

Here, the plaintiffs argue that Conn. Gen. Stat. § 36a-760a, which provides that "[l]enders and mortgage brokers shall have a duty of good faith with respect to the performance of any contract with a borrower relative to a nonprime home loan," creates a fiduciary duty between the defendants and the plaintiffs. However, a statutory duty of good faith and fair dealing does not create a fiduciary duty, as the two are separate and distinct duties. See Friedman v. Liberty Mut. Ins. Co., No. FBT-

-9-

CV095029084S, 2010 WL 2365449, at *3 (Conn. super. Ct. May 6, 2010) ("Though there are implied duties of good faith and fair dealing, the ordinary business dealing, whether a consumer transaction or not, does not establish a fiduciary relationship . . . .").

The plaintiffs also argue that the defendants had a fiduciary duty to the plaintiffs because "there [wa]s a justifiable trust confided on one side and a resulting superiority and influence on the other."  Pls.' Mem. 23 (quoting Southbridge Assocs., LLC v. Garofalo, 53 Conn. App. 11, 18 (1999).  As the defendants correctly point out, however, "[g]enerally there exists no fiduciary relationship merely by virtue of a borrower lender relationship between a bank and its customer."  Southbridge Assocs., LLC, 53 Conn. App. at 19 (finding no fiduciary relationship absent evidence the lender "intended to act with [the borrower]'s interests in mind").  After all, "[a] lender has the right to further its own interest in a mortgage transaction and is not under a duty to represent the customer's interest."  Id.

Because the plaintiffs plead no facts beyond the defendants "assisting and advising" the plaintiffs during the loan modification negotiation process, which is no different than conduct one would typically expect in a borrower-lender relationship, the plaintiffs fail to allege facts that would establish the existence of a fiduciary duty.

-10-

Therefore, the plaintiffs fail to state a claim for breach of a fiduciary duty, and the motion is being granted with respect to Count Eight.

**Count Nine – Vexatious Litigation**

"[A] claim for vexatious litigation requires a plaintiff to allege that the previous lawsuit was initiated maliciously, without probable cause, and terminated in the plaintiff's favor." Blake v. Levy, 191 Conn. 257, 263 (1983). A plaintiff need not "prove a favorable termination either by pointing to an adjudication on the merits in his favor or by showing affirmatively that the circumstances of the termination indicated his innocence or nonliability, so long as the proceeding has terminated without consideration." DeLaurentis v. New Haven, 220 Conn. 225, 251 (1999) (emphasis added).

Here, the defendants argue the plaintiffs fail to allege that the foreclosure action, which is the basis for this claim, terminated in favor of the plaintiffs. The facts alleged in Count Nine and the paragraphs incorporated by reference thereunder include no allegation that the foreclosure action terminated in any fashion, much less in favor of the plaintiffs. However, the court takes judicial notice of the Tolling Agreement and the withdrawal of the foreclosure action as reflected on the docket for that case, each dated March 27, 2014. See Defs. Mem. Ex. A, B and C (Doc. Nos. 21-1, 21-2, 21-3).

The defendants argue that the Tolling Agreement reflects a settlement agreement between the parties, and the subsequent withdrawal of the foreclosure action is thus not a termination in the plaintiffs' favor and cannot support a claim for vexatious litigation.  The court disagrees.  A review of the Tolling Agreement reveals that the consideration supporting the agreement does not include a dismissal or withdrawal of the action.  Rather, it appears that the impending dismissal or withdrawal of the action was a reason the parties entered into that agreement.  See Tolling Agreement, Defs.' Mem. Ex. B ("WHEREAS the parties have agreed that the foreclosure action including a counterclaim will be withdrawn and/or dismissed under the Court dormancy program[.]").  By its terms, the consideration for the Tolling Agreement is that "[a]ny and all statutory, contractual, and/or equitable limitation periods" with respect to either parties' claims against the other will be tolled, and that neither party will assert against the other the defenses of expiration of any periods of limitation, nor the doctrines of laches, waiver or estoppel.  Therefore, it appears that the foreclosure action did not terminate as a result of a compromise or settlement, but rather terminated without consideration.

Accordingly, it appears that although they have not done so, the plaintiffs can allege facts sufficient to state a claim for

vexatious litigation.  Therefore, the motion is being granted with respect to Count Nine, but with leave to replead.

**Count Ten – Invasion of Privacy**

The plaintiffs contend that the defendants' conduct falls within the first of the four categories of invasion of privacy recognized by the Connecticut Supreme Court: unreasonable intrusion upon the seclusion of another.  See Foncello v. Amorossi, 284 Conn. 225, 234 (2007).  This tort has been defined as the "intentional invasion upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." Caro v. Weintraub, 618 F.3d 94, 100 (2010) (quotation marks omitted).

Here, the plaintiffs allege the defendants repeatedly asked about the plaintiffs' financial information, repeatedly asked for documents, induced the plaintiffs to default on their loan, and breached both modification agreements.  None of this conduct, even when viewed in the aggregate, amounts to a highly offensive invasion upon the seclusion of the plaintiffs' private affairs. First, neither the breach of contract allegations nor those related to the inducement of default can be categorized as an invasion of the plaintiffs' private affairs.  The plaintiffs elected to do business with the defendants, and even if the defendants' conduct was improper or wrongful, such conduct does not constitute an invasion of the plaintiffs' privacy.  The

request for financial information and documents, even if made
repeatedly, is to be expected in the course a lender-borrower
relationship.  When borrowers engage in negotiations with a
lender, they should expect they will be asked to provide detailed,
private financial information as a part of the process.  Thus,
even if such conduct amounts to an invasion of the plaintiffs'
private affairs, under these circumstances, it would not be highly
offensive to a reasonable person.

Therefore, the motion is being granted with respect to Count
Ten.

**Count Eleven – Negligence**

The plaintiffs combine multiple theories of negligence, based
on statutorily created duties under 12 U.S.C. § 2605(b) and Conn.
Gen. Stat. § 36a-760a, as well as the common law duty of care.
The defendants argue that the plaintiffs fail to state a claim
because the defendants owed no duty of care to the plaintiffs.
Each theory is addressed separately.

The plaintiffs allege that the defendants did not comply with
the notice requirements set forth in 12 U.S.C. § 2605(b), and in
so doing, caused the plaintiffs harm.  This statute creates a duty
owed by mortgage loan servicers to borrowers, and it also creates
a cause of action.  See 12 U.S.C. § 2605(b)(1) ("Each servicer of
any federally related mortgage loan shall notify the borrower in
writing of any assignment, sale, or transfer of the servicing of

-14-

the loan to any other person."); § 2605(f) ("Whoever fails to
comply with any provisions of this section shall be liable to the
borrower for each such failure . . . ."). While it is not a
negligence claim, the plaintiffs have sufficiently pled a
violation of this statute.

The plaintiffs also claim negligence based on the defendants'
alleged breach of the duty of good faith under Conn. Gen. Stat.
§ 36a-760a (cited by the plaintiffs as Conn. P.A. 08-176 § 22(b)).
This statute imposes a duty of good faith on lenders and mortgage
brokers, which constitutes a duty of fair dealing but does not
constitute a duty of care. See J. Walter Thompson, U.S.A., Inc.
v. First BankAmericano, 518 F.3d 128, 137 (2d Cir. 2008) ("We also
hold that the standard of 'good faith' [in a different but
analogous context] under the U.C.C. is one that commands a 'duty
of fair dealing' and not a 'duty of care.'"). Thus, this statute
does not impose an independent duty of care on the defendants, and
the plaintiffs fail to state a claim insofar as they rely on the
duty created by Conn. Gen. Stat. § 36a-760a.

Finally, the plaintiffs claim negligence based on the
defendants owing them a duty of care under common law. However,
courts have found no Connecticut common law duty of care between a
lender and a borrower in this context. See Blanco v. Bank of
America, N.A., No. HHDCV156060162s, 2016 WL 2729319 (Conn. Super.
Ct. Apr. 19, 2016) (finding no duty of care, after extensive

analysis and review of existing caselaw, owed by a lender or loan servicer to a borrower); Devine v. Nationstar Mortgage, LLC, No. CV166031849s, 2016 WL 7443995 (Conn. Super. Ct. Nov. 21, 2016) (relying largely on the analysis from Blanco); Vaccaro v. U.S. Bank N.A., No. CV146050373s, 2016 WL 8488123 (Conn. Super. Ct. Nov. 8, 2016) (finding no common law duty nor private cause of action against a lender for failure to comply with the foreclosure mediation procedure).

Therefore, the motion is being denied with respect to any claim arising under 12 U.S.C. § 2605(b), and granted with respect to all other claims in Count Eleven.

**Count Thirteen – Slander of Title**

"A cause of action for slander of title consists of the uttering or publication of a false statement derogatory to the plaintiff's title, with malice, causing special damages as a result of diminished value of the . . . property in the eyes of third parties." Gilbert v. Beaver Dam Ass'n of Stratford, Inc., 85 Conn. App. 663, 672-73. "Special damage has a technical meaning when used in respect to pleading . . . . Special damages are [those] which the law does not necessarily imply that the plaintiff has sustained from the act complained of." GMAC Mortgage, LLC v. Tornheim, No. CV096001296, 2010 WL 1551332 (Mar. 24, 2010).

With respect to the requirement that the defendants publish a false statement derogatory to the plaintiffs' title, the plaintiffs allege that Deutsche Bank "falsely published in the land records that Plaintiffs owed money on the lien," but the plaintiffs do not allege facts that show that that statement was false.  Rather, they allege only that the defendants were not able to establish the amounts due on the loan.  With respect to the requirement that the false statement be uttered or published with malice, the plaintiffs allege no facts that would establish malice, but rather merely that the foreclosure was wrongful and that a lis pendens was filed reflecting the foreclosure status of the property.

Finally, with respect to the requirement that the uttering or publication of a false statement have caused special damages, the plaintiffs merely allege that the clouded title "has resulted in pecuniary loss for Plaintiffs."  Compl. Count Thirteen ¶ 20.  The plaintiffs argue that "[i]t is certainly plausible that pecuniary damages were incurred," and "[d]iscovery will flesh out the evidence to further support" this claim.  Pls.' Mem. 34-35. However, any facts tending to show that the plaintiffs suffered such special damages should come from information that is within their control, and making such a conclusory allegation is not sufficient to satisfy this requirement.

Therefore, the motion is being granted with respect to Count Thirteen.

## Count Fourteen – Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, the plaintiff must plead facts showing:

> (1) that the actor intended to inflict the emotional distress, or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

Appleton v. Bd. of Educ., 254 Conn. 205, 210 (2000).  Whether a defendant's conduct satisfies the requirement that it be extreme and outrageous is initially a question for the court to decide. See id.  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Carrol v. Allstate Ins. Co., 262 Conn. 433, 443 (2003).

The plaintiffs allege or assert facts that state or could state claims for breach of contract and acting in bad faith in violation of the implied covenant of good faith and fair dealing, engaging in unfair trade practices, engaging in vexatious litigation, and violation of a statutory duty imposed upon mortgage servicers under 12 U.S.C. 2605(b).  In Count Fourteen, they then recite the facts or allegations that support these

-18-

claims, and in addition, allege that "[t]he actions described
herein constitute extreme and outrageous conduct in that the
actions offend public policy, are immoral, unethical, and
intolerable." Compl. Count Fourteen, ¶ 46. As recognized in
Parker v. Bank of Am., N.A., "[d]ealing with a large financial
institution can be enormously frustrating at times, and is
doubtless especially distressing if one's home is at stake." No.
11-1838, 2011 WL 6413615, at *13 (Super. Ct. Mass. Dec. 16, 2011).
Taking the plaintiffs' factual allegations here as true, the
defendants' conduct went beyond frustrating the borrower, and
included actions taken maliciously and in bad faith, as well as
actions that offend public policy and are immoral and unethical.
But although the plaintiffs allege in conclusory fashion that the
defendants engaged in conduct that was "intolerable," they do not
identify any specific act or acts that constitute intolerable
conduct. The specific acts the plaintiffs do identify fall short
of constituting conduct that is utterly intolerable in a civilized
society, so such a conclusory assertion with respect to
intolerable conduct is not sufficient, and the plaintiffs have
failed to allege extreme and outrageous conduct. Compare Cecchini
v. Schenck, No. 3:14-CV-1704(MPS), WL 2016 777901, at *8 (D. Conn.
Feb. 29, 2016) (holding allegations that defendant waived gun in
plaintiff's face, stated he did not care if plaintiff police
officer was safe while on duty and told plaintiff during a meeting

attended by numerous employees that plaintiff's wife was having an affair with the police captain, were sufficient to plead extreme and outrageous conduct) and Schofield v. Magrey, 2015 WL 521418 (D. Conn. Feb. 9, 2015) (holding sufficiently outrageous police officers' conduct in entering plaintiff's home, forcing him to receive unwanted medical treatment, disregarding signs he was not in medical distress, and using excessive force in furthering an unlawful seizure), with Carrol, 262 Conn. 433, 439-445 (holding insurance company's conduct -- inaccurate determination that the plaintiff committed arson based on an incomplete investigation and racial animus, and numerous requests for information from the plaintiff which bordered on harassment -- was not extreme and outrageous).

The court notes that in a number of cases where the facts are similar to those alleged here by the plaintiffs, courts have also concluded that the plaintiff(s) fail to allege conduct that was extreme and outrageous. See Justo v. Indymac Bancorp, No. SACV 09-1116 JVS (AGRx), 2010 WL 623715 (C.D. Cal Feb. 19, 2010) (lenders repeatedly promise plaintiffs qualification for loan modification programs, plaintiffs repeatedly submit personal and financial information, and lenders repeatedly fail to respond); Echeverria v. BAC Home Loans Servicing, LP 900 F. Supp. 2d 1299 (M.D. Fla. (2012) (lenders tell mortgagors they pre-qualify for loan modification, then deny their request to modify); Keane v.

<u>Countrywide Home Loans, Inc.</u>, No. 10-10751, 2011 WL 870782 (D. Mass. Mar. 11, 2011) (lender provides documents prepared in a language mortgagor could not understand and does not verify her self-reported income); <u>Parker v. Bank of Am., N.A.</u>, No. 11-1838, 2011 WL 6413615 (Mass. Super. Dec. 16, 2011) (lender tells mortgagor she cannot modify loan because she is not in default, repeatedly loses her paperwork, requires her to submit and resubmit documents, and promises to send paperwork that is never received).  The conduct alleged by the plaintiffs is no more egregious than that alleged in any of the above cases, all of which fell short of pleading extreme and outrageous conduct.

Therefore, the motion to dismiss is being granted with respect to Count Fourteen.

It is so ordered.

Signed this 24th day of March, 2017, at Hartford, Connecticut.


_____/s/ AWT_____
Alvin W. Thompson
United States District Judge